UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

BARBARA ARZONETTI

             Plaintiff,

          v.

POPE RESOURCES, A DELAWARE
LIMITED PARTNERSHIP, THOMAS M.
RINGO, WILLIAM R. BROWN, JOHN E.
CONLIN, SANDY D. MCDADE, and
MARIA M. POPE,

             Defendants.

------------------------------------------------------------

Case No._____

**COMPLAINT FOR VIOLATIONS OF
THE FEDERAL SECURITIES LAWS**

JURY TRIAL DEMANDED

Plaintiff Barbara Arzonetti ("Plaintiff"), by and through her undersigned counsel, for her complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.     This is an action brought by Plaintiff against Pope Resources, A Delaware Limited Partnership ("Pope" or the "Partnership") and the members of Pope's managing general partner's, Pope MGP, Inc. ("MGP"), Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Pope will be acquired by Rayonier Inc. ("Rayonier") through Rayonier, L.P. ("Opco"), Rayonier Operating Company LLC ("ROC"), Rayonier Operating Company Holdings, LLC ("Opco Holdings"), Pacific GP Merger Sub I, LLC ("Merger Sub 1"), Pacific GP Merger Sub II, LLC

("Merger Sub 2"), and Pacific LP Merger Sub III, LLC ("Merger Sub 3"), as well as Pope's equity general partner, Pope EGP, Inc. ("EGP"), and MGP (the "Proposed Transaction").

2.        On January 15, 2020, Pope and Rayonier issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated January 14, 2020 (as amended on April 1, 2020, the "Merger Agreement") to sell Pope to Rayonier.  Under the terms of the Merger Agreement, each Pope unitholder will receive consideration consisting of (i) 3.929 Rayonier shares, (ii) 3.929 units representing limited partnership interests in Opco, or (iii) $125.00 in cash (the "Merger Consideration"), subject to proration so that approximately 70% of the Pope units will be exchanged for Rayonier shares or Opco units and approximately 30% of the Pope units will be exchanged for cash.  The Proposed Transaction is valued at approximately $554 million.

3.        On April 6, 2020, defendants caused to be filed a Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Pope unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Partnership's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the special committee of the Board's ("Special Committee") financial advisor, Centerview Partners, LLC ("Centerview"); and (iii) Centerview's and Pope insiders' potential conflicts of interest.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.        In short, unless remedied, Pope's public unitholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction.  Plaintiff seeks to

enjoin the unitholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.     This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Pope's common units trade on the NASDAQ Global Select Market which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8.     Plaintiff is, and has been at all times relevant hereto, a continuous unitholder of Pope.

9.     Defendant Pope is a Delaware limited partnership with its principal executive offices located at 19950 Seventh Avenue NE, Suite 200, Poulsbo, Washington 98370.  Pope, together with its subsidiaries, owns and manages 125,000 acres of timberland and higher-and-better-use properties in Washington.  The Partnership also co-invests in and consolidates three private equity timber funds that own 141,000 acres of timberland in Washington, Oregon, and

California.  Pope's common units trade on the NASDAQ Global Select Market under the ticker symbol "POPE."

10.     Defendant Thomas M. Ringo ("Ringo") has been President, Chief Executive Officer ("CEO"), and a director of MGP since 2014.  Defendant Ringo previously served as MGP's Chief Financial Officer beginning in 2000 and has been working for the MGP in a management capacity since 1989.

11.     Defendant William R. Brown ("Brown") has been a director of MGP since October 2015.

12.     Defendant John E. Conlin ("Conlin") has been a director of MGP since December 2005.

13.     Defendant Sandy D. McDade ("McDade") has been a director of MGP since September 2016.

14.     Defendant Maria M. Pope ("Pope") has been a director of MGP since December 2012.

15.     Defendants identified in paragraphs 10-14 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

16.     EGP is a Delaware corporation and the equity general partner of Pope.

17.     MGP is a Delaware corporation and the managing general partner of Pope.

18.     Rayonier is a North Carolina corporation with its principal executive offices located at 1 Rayonier Way, Wildlight, Florida 32097.  Rayonier is a leading timberland REIT with assets located in some of the most productive softwood timber growing regions in the U.S. and New Zealand.  Rayonier's common stock trades on the New York Stock Exchange under the ticker symbol "RYN."

19.     Opco is a Delaware limited partnership and a direct subsidiary and indirect wholly owned subsidiary of Rayonier.

20.     ROC is a Delaware limited liability company and a wholly owned subsidiary of Rayonier.

21.     Opco Holdings is a Delaware limited liability company and a wholly owned subsidiary of Rayonier and the limited partner of Opco.

22.     Merger Sub I is a Delaware limited liability company and a wholly owned subsidiary of Rayonier.

23.     Merger Sub 2 is a Delaware limited liability company and a wholly owned subsidiary of Rayonier.

24.     Merger Sub 3 is a Delaware limited liability company and a wholly owned subsidiary of ROC.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.     Headquartered in Poulsbo, Washington, Pope manages timber resources in the United States.  The Partnership operates in four segments: Partnership Timber, Funds Timber, Timberland Investment Management, and Real Estate.  It is involved in growing, managing, harvesting, and marketing timber from the Partnership's 120,000 acres of direct timberland ownership in Washington; and private equity timber funds' 134,000 acres of timberland in Washington, Oregon, and California that is co-owned with third-party investors.  The Partnership also engages in commercial thinning operations; leasing ground for cellular communication towers; gravel mines and quarry operations; and land use permits.  In addition, it provides management, acquisition, disposition, and consulting services to third-party owners of timberland; provides management services to the funds; and acquires and manages timberland portfolios on

behalf of the funds.  Further, the Partnership secures entitlements and/or infrastructure for the development; sells the entitled property to a party who would construct improvements; and leases residential and commercial properties in Port Gamble, Washington. Additionally, it operates a portfolio of approximately 2,000 acres in the west Puget Sound region of Washington.

26.     On November 6, 2019, Pope announced its third quarter 2019 financial results.  For the quarter, consolidated cash provided by operations was $12.3 million compared to $11.6 million during the third quarter of 2018.  Cash available for distribution was $10.8 million compared to $5.0 million during the third quarter of 2018.  Defendant Ringo commented on the quarter, stating:

> Log prices softened further in Q3 as ongoing trans-Pacific trade uncertainties coupled with flat domestic housing starts to generate muted demand - at the same time summer weather remained mild, thus conducive to log harvesting activities which increased supply . . . .  Given these dynamics, we are pleased with the degree to which we front-loaded our annual harvest in 2019.  From an operations standpoint, the most noteworthy Q3 news was the sale of the final 65 residential lots from our Harbor Hill project in Gig Harbor, Washington, for $12.0 million, a fitting capstone for a sales program that delivered 546 residential lots over a six-year time frame to merchant builders hungry for inventory in the booming Puget Sound marketplace.

27.     The press release also set forth the Partnership's outlook, stating:

> We expect 2019 harvest volume will range between 61-65 MMBF for the Partnership, and 81-85 MMBF for the Funds, including timber deed sales. The Partnership volume includes 4-8 MMBF of volume from timber located on real estate properties that is not factored into our long-term, sustainable harvest plan of 57 MMBF. On a look-through basis, total 2019 harvest volume, including timber deed sales, is expected to be 72-76 MMBF. We expect choppiness at best in log prices over the next several quarters with uncertainty related to U.S. - China trade tensions.
>
> Prior to year end, we expect the Partnership to close on the sale of a parcel of undeveloped land in Jefferson County, an industrial lot in Kitsap County, and a potential conservation easement sale in Kitsap County. We also expect to continue incurring general and administrative expenses at an elevated level in connection with our recently announced ongoing discussions regarding a potential strategic transaction. We can offer no additional guidance as to the amount or timing of any such expenses in the future.

**The Proposed Transaction**

28.     On January 15, 2020, Pope and Rayonier issued a joint press release announcing

the Proposed Transaction.  The press release states, in relevant part:

> WILDLIGHT, Fla. & POULSBO, Wash -- Rayonier Inc. ("Rayonier")
> (NYSE:RYN) and Pope Resources, A Delaware Limited Partnership ("Pope
> Resources") (NASDAQ:POPE) announced today that they have entered into a
> definitive merger agreement under which Rayonier will acquire all of the
> outstanding limited partnership units of Pope Resources for consideration
> consisting of equity and cash. Under the terms of the agreement, which has been
> unanimously approved by the boards of directors of both companies as well as the
> special committee of Pope Resources' board composed solely of independent
> directors, Pope Resources unitholders will have the right to elect to receive (i) 3.929
> common shares of Rayonier, (ii) 3.929 units of Rayonier Operating Partnership LP,
> or (iii) $125 in cash in exchange for each unit of Pope Resources, subject to a
> proration mechanism as described below. Based on Rayonier's 10-day volume-
> weighted average price, the transaction values Pope Resources' limited partnership
> equity at $554 million, or $126.91 per unit (assuming 70% of the Pope Resources
> units are exchanged for equity consideration and 30% are exchanged for cash
> consideration).

> Following the closing of the transaction, Rayonier Operating Partnership LP (n/k/a
> Rayonier Operating Company LLC) will own all of the assets of Rayonier and Pope
> Resources and will be the operating partnership of Rayonier's umbrella partnership
> real estate investment trust ("UPREIT"). The units of Rayonier Operating
> Partnership LP can be converted into cash based on the market price of Rayonier
> common shares or, at Rayonier's option, exchanged for Rayonier common shares
> on a 1:1 basis, following a 60-day notice period. Pope Resources unitholders that
> elect to receive Rayonier Operating Partnership LP units will generally defer any
> capital gain recognition on their Pope Resources units until they exchange those
> units for cash or Rayonier common shares.

> "We are delighted to be combining two premier pure-play timber organizations
> using an innovative tax-deferred UPREIT structure," said David Nunes, President
> and CEO of Rayonier. "Pope Resources has a strong track record as a best-in-class
> Pacific Northwest timberland operator and possesses an excellent set of assets in
> high-quality markets. Our two organizations have very compatible cultures, a
> complementary set of assets and a shared dedication to value maximization through
> intensive silvicultural practices and higher-and-better-use real estate operations.
> The addition of these high-quality Pacific Northwest timberlands increases
> Rayonier's ownership in the region to 504,000 acres, adds 57 MMBF to our
> sustainable yield, increases our proportion of Douglas-fir inventory and offers a
> complementary age-class fit. We look forward to completing this transaction by
> mid-year, which continues our strategy of adding high-quality timberlands in strong

log markets and building long-term value for our shareholders through prudent capital allocation."

* * *

**Transaction Details**

***Proration Mechanism:*** Pursuant to the terms of the agreement, elections will be subject to proration to ensure that the aggregate amount of cash, on the one hand, and Rayonier common stock and Rayonier operating partnership units, on the other hand, that are issued in the merger would be equal to the amounts issued as if every Pope Resources unit received 2.751 Rayonier common shares or Rayonier operating partnership units and $37.50 in cash. If elections for the Rayonier common shares and Rayonier operating partnership units are oversubscribed, then to reduce the effect of such proration Rayonier may, in its discretion, add additional equity (and decrease the amount of cash) payable to the Pope Resources unitholders making such elections.

***GP Consideration:*** The merger agreement also provides for Rayonier to acquire the general partner entities of Pope Resources, Pope MGP, Inc. and Pope EGP, Inc., for consideration consisting of $10 million of cash (exclusive of the Pope Resources units owned by these entities).

***Valuation:*** Inclusive of the general partner consideration described above, the transaction values Pope Resources' total equity at $564 million and its enterprise value at $656 million (excluding fund net debt).

***Transaction Support:*** The general partners of Pope Resources have approved the transaction, and certain affiliated unitholders holding approximately 16% of the outstanding limited partnership units have entered into voting agreements to vote in favor of the merger.

**Timing and Approvals**

The transaction is expected to close in mid-2020. The transaction requires approval of a majority of the Pope Resources unitholders and is subject to customary closing conditions and regulatory approvals.

## Insiders' Interests in the Proposed Transaction

29.     Pope insiders are the primary beneficiaries of the Proposed Transaction, not Pope's public unitholders.  The Board and Pope's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff

and the public unitholders of Pope.

30.    Notably, Pope insiders stand to reap substantial financial benefits for securing the deal with Rayonier.   For example, if they are terminated in connection with the Proposed Transaction, Pope's named executive officers will receive substantial cash severance payments in the form of golden parachute compensation as set forth in the following table:

| Name | Cash ($)[1] | Equity ($)[2] | Benefits ($)[3] | Total ($) |
|------|------|------|------|------|
| Thomas M. Ringo | | | | |
| President and CEO | 2,567,703 | 1,256,115 | 25,794 | 3,849,612 |
| Kevin C. Bates | | | | |
| Vice President of Timberland Investments | 702,299 | 447,064 | | 1,149,362 |
| Michael J. Mackelwich | | | | |
| Vice President, Timberland Operations | 576,644 | 335,645 | | 912,289 |
| Daemon P. Repp | | | | |
| Vice President and CFO | 498,603 | 144,442 | | 643,045 |
| Jonathan P. Rose | | | | |
| Vice President—Real Estate and President of Olympic Property Group | 503,036 | 371,440 | | 874,476 |

## The Proxy Statement Contains Material Misstatements or Omissions

31.    The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Pope's unitholders.   The Proxy Statement misrepresents or omits material information that is necessary for Pope's unitholders to make an informed decision whether to vote in favor of the Proposed Transaction.

32.    Specifically, as set forth below, the Proxy Statement fails to provide Pope unitholders with material information or provides them with materially misleading information concerning: (i) the Partnership's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Special Committee's financial advisor, Centerview; and (iii) Centerview's and Pope insiders' potential conflicts of interest.

### Material Omissions Concerning the Partnership's Financial Projections

33.    The Proxy Statement omits material information regarding the Partnership management's financial projections, relied upon by Centerview in its financial analyses.

34.     For example, in connection with its *Discounted Cash Flow Analysis ("DCF")*, Centerview discounted:

> (i) the forecasted after-tax unlevered free cash flows of Pope over the period beginning October 1, 2019 and ending on December 31, 2037, as set forth in the Pope forecasts and (ii) a range of illustrative terminal values of Pope, calculated by Centerview applying perpetuity growth rates ranging from 2.1% to 2.5% to Pope's after-tax unlevered free cash flows for the terminal year (as set forth in the Pope forecasts). . . .

Proxy Statement at 102. The Proxy Statement, however, fails to set forth the Partnership's after-tax unlevered free cash flows ("UFCFs") for the years 2026 through 2037, as well as the terminal year UFCF of Pope, utilized by Centerview for its DCF.

35.     The Proxy Statement also fails to disclose the line items underlying (i) Adjusted EBITDA, including (a) earnings, (b) interest, (c) taxes, and (d) depreciation and amortization; and (ii) UFCF, including (a) capex, (b) real estate development capital and timberland acquisitions, (c) non-cash cost of land sold, (d) adjustments for the Pope Fund's business, and (e) adjustments for changes in net working capital.

36.     The omission of this material information renders the statements in the "Certain Unaudited Prospective Financial Information" and "Opinion of the Pope Special Committee's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's Financial Analyses***

37.     The Proxy Statement describes Centerview's fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of Centerview's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Pope's public unitholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place

on Centerview's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

38.     With respect to Centerview's *DCF*, the Proxy Statement fails to disclose: (i) the UFCFs of Pope for the years 2026 through 2037; (ii) Pope's UFCF for the terminal year; (iii) the terminal values for the Partnership; (iv) quantification of the inputs and assumptions underlying the discount rates ranging from 6.7% to 8.8%; (v) Pope's net debt as of September 30, 2019; and (vi) the number of fully diluted outstanding Pope units based on the most recently available information as set forth in the Pope Internal Data.

39.     With respect to Centerview's *Public Company Analysis,* the Proxy Statement fails to disclose Pope's 2020 estimated EBITDA utilized in the analysis.

40.     With respect to Centerview's *Precedent Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Centerview in the analysis.

41.     Without such undisclosed information, Pope unitholders cannot evaluate for themselves whether the financial analyses performed by Centerview were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction.  In other words, full disclosure of the omissions identified above is required in order to ensure that unitholders can fully evaluate the extent to which Centerview's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

42.     The omission of this material information renders the statements in the "Opinion of the Pope Special Committee's Financial Advisor" and "Certain Unaudited Prospective Financial

Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning Centerview's and Partnership Insiders' Potential Conflicts of Interest***

43.     The Proxy Statement fails to disclose material information concerning the conflicts of interest faced by Centerview.

44.     The Proxy Statement sets forth, "[i]n the two years prior to the date of its written opinion, Centerview has been engaged to provide financial advisory services to the Pope board, including in connection with certain strategic matters, and has received compensation of $1,125,000 from Pope for such services." *Id.* at 103.  The Proxy Statement fails to disclose the nature of the services Centerview performed for Pope and whether Centerview has performed any services for any of Pope's affiliates, including the GP shareholders, and any compensation Centerview has received in connection with such services.

45.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

46.     The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Partnership's insiders.

47.     The Proxy Statement fails to disclose the specific details of all employment and retention-related discussions and negotiations that occurred between Rayonier and Pope executive officers and directors, including who participated in all such communications, when they occurred and their content.  The Proxy Statement further fails to disclose whether any of Rayonier's proposals or indications of interest mentioned management retention, consulting arrangements, cash, stock and co-investment opportunities, or equity participation in the combined company.

48.     Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Pope's unitholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Partnership's unitholders.

49.     The omission of this material information renders the statements in the "Opinion of the Pope Special Committee's Financial Advisor" and "Interests of Pope's Directors and Executive Officers in the Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

50.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the unitholder vote on the Proposed Transaction, Plaintiff and the other unitholders of Pope will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

51.     Plaintiff repeats all previous allegations as if set forth in full.

52.     During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the

statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

53.     By virtue of their positions within Pope, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement.  The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants.  It misrepresented and/or omitted material facts, including material information about Pope's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Centerview, and potential conflicts of interest faced by Centerview and Partnership insiders.  The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

54.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder would consider them important in deciding how to vote on the Proposed Transaction.

55.     By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

56.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate.  Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of
### Section 20(a) of the Exchange Act

57.     Plaintiff repeats all previous allegations as if set forth in full.

58.     The Individual Defendants acted as controlling persons of Pope within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers

and/or directors of Pope, and participation in and/or awareness of Pope's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Pope, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Pope, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of the Proxy Statement.

61.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Individual Defendants had input into.

62.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-

9, promulgated thereunder, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' conduct, Pope's unitholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Pope, and against defendants, as follows:

A.   Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Pope unitholders;

B.   In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.   Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D.   Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.   Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.


Dated: April 17, 2020

**WEISSLAW LLP**

By _____

Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*